UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **JEFFREY J. DEROSIA** | **14-11244** |
| **CATINA C. DEROSIA** | SECTION A |
| DEBTORS | CHAPTER 11 |

## REASONS FOR DECISION

On April 23, 2015, the Objection to Claim No. 20 of Superior Shipyard and Fabrication, Inc.[1] ("Superior") came before the Court. At the conclusion of the trial, the Court took the matter under advisement.

**I. Findings of Fact**

Jeffery J. DeRosia, Sr. ("DeRosia Sr.") is a full time salesman for GIS Oilfield Contractors. In 2008, DeRosia Sr. formed Global Oilfield Contractors, L.L.C. ("Global") for the purpose of working owned or leased vessels in the oil industry.[2] Global was wholly owned by DeRosia Sr. who was also its President.

From time to time, Global's vessels required repairs. Prepetition, Superior Shipyard and Fabrication, Inc. ("Superior") performed work on several of Global's vessels and claims that it is owed in excess of $202,000 for its work. In connection with the outstanding invoices, Superior has filed a proof of claim in this case, alleging DeRosia Sr. is personally liable for the outstanding amounts.

---

[1] P-81. Global owned one vessel, the M/V Lily Jane, also known as the M/V Jeffrey D. Five other vessels, the M/V Supplier I, Lady Ione, Lady Eldine, Lady Barbara, and Ms. Lisa, were also leased by Global.

[2] Global has ceased operations.

In support of its claims, Superior produced a work order dated January 8, 2011, purportedly signed by DeRosia Sr. ("Work Order").[3] The Work Order authorizes repairs to the M/V Lilly Lane on behalf of Global. Above the signature line, the Work Order provides:

> In the event of failure by the boat owner to honor this agreement, the undersigned acknowledges that he will be held personally liable for the debt.

Superior also produced a forbearance agreement between itself and Global which it alleges obligates DeRosia Sr. for Global's outstanding obligations. DeRosia Sr. denies signing the Work Order for the M/V Lily Jane but admits to the execution of the forbearance agreement. DeRosia Sr. argues that the terms of the forbearance do not obligate him on Global's debts.

Although Global was owned by DeRosia Sr., he did not participate in its day to day operations. Jeffery DeRosia, Jr. ("DeRosia Jr.") was Global's operator and primary contact with Superior. In January 2011, DeRosia Jr. contacted Superior regarding emergency repairs needed to the M/V Lilly Jane.[4] Because time was of the essence, Superior immediately began preparing its dry dock for the work. However, when it became apparent that the job would be substantial, Superior halted work until further assurance of payment could be made. At the time the M/V Lily Jane was brought in for repairs, Global already owed Superior $42,456.84 on several previous jobs.

---

[3] Exh. 2, p. 1.

[4] DeRosia Sr. and Brent Duet's testimony conflict as to whether they had a meeting prior to the Work Order being signed. Brent Duet initially testified that DeRosia Jr. told Scott Duet that the work on the Lily Jane must be completed within fifteen (15) days. Later, Brent Duet testified that DeRosia Sr. told him that the work must be completed within fifteen (15) days. DeRosia Sr. denied that such a meeting took place. Based on the testimony, the Court finds that DeRosia Sr. did not meet with any representatives of Superior prior to the Work Order being signed.

Superior was concerned about Global's ability to pay both its already existing account and the new charges that would be incurred in connection with the M/V Lilly Jane's repairs.

In order to protect itself, Superior demanded that a form of work order be signed and that DeRosia Sr. personally obligate himself for the charges.[5] Superior spoke with DeRosia Jr., who assured it that DeRosia Sr. would execute the necessary documents. Mr. Brent Duet, Superior's President and owner, prepared the Work Order and personally went to Global's office to have it executed. When he arrived at Global, he was told that DeRosia Sr. was not there, but the paperwork could be left for his execution. Duet left the paperwork, and the next day it was returned to Superior, allegedly signed by DeRosia Sr.[6] The work was preformed and the balance due under the Work Order is $77,626.13.[7]

DeRosia Sr. testified that he never signed the Work Order. Although admittedly this testimony is self-serving, for the reasons set forth below, the Court concludes that DeRosia Sr. was credible on this point.

Although DeRosia Sr. was Global's only officer and owner, he was seldom involved in the details of its operations. Nevertheless, DeRosia Sr. was the only signatory on Global's bank account. According to DeRosia Sr, either Derosia Jr. or DeRosia Sr.'s sister would routinely sign his name to company checks or other documents as needed.[8] DeRosia Sr. was aware of their doing

---

[5] Pervious work had been contracted orally between DeRosia Jr. and Superior.

[6] Exh. 2, p. 1.

[7] None of the other outstanding amounts owed Superior have executed Work Orders.

[8] DeRosia Sr. testified that he had given both his sister and his son the authority to sign his name to business checks. He later recanted stating that only his sister had that authority. The Court finds DeRosia Sr.'s initial testimony credible.

so and authorized this practice.[9] Nevertheless, DeRosia Sr. testified that he did not sign the Work Order, and he did not give authority for anyone to sign it on his behalf.[10]

On March 14, 2012, Superior held a meeting with DeRosia Sr. to discuss Global's outstanding balance. By this time DeRosia Sr. was trying to liquidate Global and settle its accounts. As a result, DeRosia Sr. asked Superior to forbear from taking legal action for sixty days. In return, Superior requested that Global and DeRosia Sr. refrain from seeking bankruptcy relief. The agreement between Superior and Global was reduced to writing.[11]

## II. Law and Analysis

### A. Authority to Sign the Work Order

The Court finds DeRosia Sr.'s testimony that he did not sign the Work Order credible. DeRosia Sr.'s testimony that he did not authorize anyone else to sign on his behalf or bind him personally was also credible. In fact, the Court seriously doubts that DeRosia Sr. knew much regarding Global's operations, except in the most general of ways. Superior did not provide the testimony of DeRosia Jr. or DeRosia Sr.'s sister in order to present evidence of who actually signed the Work Order. DeRosia Sr. speculated that DeRosia Jr. had signed it.

---

[9] DeRosia Sr.'s practice of allowing others to sign on his behalf was substantiated by a review of the various pleadings purportedly signed by DeRosia Sr. but in fact, executed by his wife on his behalf.

[10] It is worth noting that the Work Order is signed "Jeffrey J DeRosia" without any further designation of Junior or Senior.

[11] Exh. 2, p. 2.

Under Louisiana law, a person who acts for another is his mandatary or agent.[12] Louisiana law recognizes two (2) types of authority: 1) actual authority, and 2) apparent authority.[13]

> An agent's power or authority is composed of his actual authority, express or implied, together with the apparent authority which the principal has vested in him by his conduct. As between the principal and agent the limit of the agent's authority to bind the principal is governed by the agent's actual authority. As between the principal and third persons, the limit of an agent's authority to bind the principal is governed by apparent authority.[14]

### 1. Actual Authority

La. C.C. art. 2997 provides that a principal must give express authority for his mandatary to enter a surety agreement:

Authority must ... be given expressly to: ...

> (3) Contract a loan, acknowledge or make remission of a debt, or become a surety.

Although DeRosia Sr. clearly allowed his sister and son to conduct Global's business, no evidence was produced granting anyone the authority to bind DeRosia Sr. personally to the company's obligations. The Court notes that DeRosia Sr.'s case contains substantial debts incurred on behalf of Global and guaranteed by DeRosia Sr. Global's demise triggered DeRosia Sr.'s obligation as guarantor on some of Global's debts. This event formed the primary reason DeRosia Sr. sought bankruptcy relief.

---

[12] La. C.C. art. 2989.

[13] Louisiana law refers to an agent with apparent authority as a putative mandatary. *See* La. C.C. art. 3021.

[14] *Boulos v. Morrison*, 503 So.2d 1, 3 (La. 1987) (citation omitted).

DeRosia Sr. has included his guarantor debts in the various classes of creditors scheduled to receive distributions under his now confirmed plan of reorganization. There is little reason to doubt that Superior would have also been included had DeRosia Sr. believed he agreed to be personally bound to Superior. The fact that this proof of claim is one of only a few to which DeRosia Sr. has objected, supports his testimony that he neither signed nor authorized anyone to sign a Work Order obligating himself personally on the Superior claim.

Authorization to conduct the business of a company though a principal's name, does not constitute the express authority to bind the principal to a personal guaranty. In *Surplus Underwriters, Inc. v. Simmons*, 236 So.2d 530 (La. App. 4 Cir. 1970), the Louisiana Fourth Circuit Court of Appeal had the opportunity to consider a case similar to the one at hand.

In *Surplus*, insurance policies were issued to Lively Welding. When Lively failed to pay premiums, the insurer threatened cancellation unless Simmons & Associates (a related firm) guaranteed payment. Simmons & Associates' general manager sent a letter of guarantee for his employer. Two (2) additional letters confirming the guarantee of payment followed on subsequent dates, all signed by Simmons & Associates' general manager. It was undisputed that the letters purported to be letters of suretyship. However, Simmons & Associates objected to payment based on the general manager's lack of authority.

The Fourth Circuit found that a contract of suretyship must be "specially authorized in writing" by the person making the promise of suretyship. A writing is also required to authorize an agent to bind his principal as guarantor. The power must be express and special, as it is not merely an act of administration. The Fourth Circuit recognized that Simmons & Associates' general manager was authorized to conduct Simmons and Associates' business. However, it concluded he

6

was incapable of obligating Simmons & Associates for the debts of a third party, Lively. As a result, the demands by the insurer were denied.

The facts of this case are in accord. DeRosia Jr. and Derosia Sr.'s sister were generally authorized to conduct the business of Global. However, Superior has failed to prove that either party (assuming they signed on Derosia Sr.'s behalf) was specifically authorized to obligate DeRosia Sr. personally to the debts of Global.

### 2. Apparent Authority

Under Louisiana law, "One who causes a third person to believe that another person is his mandatary is bound to the third person who in good faith contracts with the putative mandatary."[15]

> Apparent authority is a doctrine by which an agent is empowered to bind his principal in a transaction with a third person when the principal has made a manifestation to the third person, or to the community of which the third person is a member, that the agent is authorized to engage in a particular transaction, although the principal has not actually delegated this authority to the agent.[16]

However, "a third party cannot rely upon a putative mandate where the transaction at issue is one for which express authority is required under LSA-C.C. art. 2997."[17] As previously explained, La. C.C. art. 2997 requires special or specific authority for an agent to obligate his principal on the debt of another. Thus, it cannot be argued that the apparent authority of DeRosia Jr. or his aunt to

---

[15] La. C.C. art. 3021.

[16] *Tedesco v. Gentry Dev., Inc.*, 540 So.2d 960, 963 (La. 1989) (citations omitted).

[17] *Amitech U.S.A., Ltd. v. Nottingham Construction Co.*, 57 So.3d 1043, 1051 (La.App. 1 Cir. 2010). *See also Carey Hodges Assoc., Inc. v. Continental Fidelity Corp.*, 264 So.2d 734, 736 (La.App. 1 Cir. 1972); *Bridges v. Hertz Equipment Rental Corp.*, 47 So.3d 519, 522, 45,647 (La.App. 2 Cir. 2010); *Tedesco v. Gentry Development, Inc.*, 540 So.2d 960, 964 (La. 1989).

7

conduct business on behalf of Global cloaked either with the apparent authority to bind DeRosia Sr. personally.

### 3. Ratification

In cases where express authority is not proven, a principal can ratify an act after the fact.[18] Ratification can be express or tacit:

> Ratification is a declaration whereby a person gives consent to an obligation incurred on his behalf by another without authority.
>
> An express act of ratification must evidence the intention to be bound by the ratified obligation.
>
> Tacit ratification results when a person, with knowledge of an obligation incurred on his behalf by another, accepts the benefit of the obligation.[19]

DeRosia Sr. neither expressly nor tacitly ratified the personal guaranty. No proof of express ratification was admitted at trial, and DeRosia Sr.'s Objection to Superior's claim clearly shows that he did not intend to ratify the agent's act. There is also no proof of tacit ratification. No proof of when DeRosia Sr. knew of the purported guaranty was introduced at trial and there was no showing that DeRosia Sr. accepted a benefit.

### 4. Agency by Estoppel

> [A]pparent authority is based on the objective theory of contracts that a party ought to be bound by what he says and manifests rather than by what he intends, so that a third person who contracts with an agent need only prove reliance on the appearance of authority manifested by the principal. Because an enforceable contract results from the agreement with the agent after the principals' conduct has manifested consent, the third person need not prove any change of position induced by the reliance. On the other hand, agency by estoppel is based on tort principles of preventing loss by an innocent person. The third person not only must show

---

[18] *Eakin v. Eakin*, 973 So.2d 873, 877-878, 2007-693 (La.App. 3 Cir. 2007).

[19] La. C.C. art. 1843.

8

reliance on the conduct of the principal, but also must show such a change of position on this part that it would be unjust to allow the principal to deny the agency.[20]

A person alleging estoppel must show both reliance and "such a change of position that it would be unjust for the speaker to deny the truth of his words."[21]

Superior did not point to any conduct of DeRosia Sr. upon which it relied. DeRosia Sr. did not represent to Superior that one of Global's employees could sign his name to a personal guaranty. Nor did DeRosia Sr. represent that he had signed the guarantee. Superior relied on the conduct and representations of DeRosia Jr., not DeRosia Sr. Superior was led to believe by DeRosia Jr. that DeRosia Sr. himself signed the Work Order, not that someone as agent signed it on DeRosia Sr.'s behalf. If in fact DeRosia Jr. signed the Work Order knowing that Superior would rely on the purported guarantee contained within its terms, and if Superior could prove this fact, Superior might have a claim against DeRosia Jr. However, no action exists against DeRosia Sr. for an unknown and unauthorized act by a person without specific authority. Therefore, the Court finds agency by estoppel is inapplicable.

**B. Agreement Not to File for Bankruptcy Relief**

On March 14, 2012, DeRosia Sr. signed an Agreement[22] stating that Global was trying to sell its assets and "requested" that Superior refrain from taking any legal action against Global and DeRosia Sr. for sixty (60) days. In return, Superior "request[ed]" in the Agreement that Global and DeRosia Sr. not seek bankruptcy relief and that Global pay the balance due to Superior.

---

[20] *Tedesco v. Gentry*, 540 So.2d 960, 964 (La. 1989) (citing Restatement (Second) of Agency § 8 (1958), comment d.

[21] *Id.* at Comment d.

[22] Exh. 2, p. 2.

Superior contends that its claim should be allowed because DeRosia Sr. agreed not to seek bankruptcy relief.

The law is clear that an agreement not to file for bankruptcy relief is unenforceable because "[i]t is against public policy for a debtor to waive the pre-petition protection of the Bankruptcy Code."[23]  Therefore, this contention is without merit.

### III. Conclusion

For the reasons assigned above, the Objection to Claim No. 20 of Superior is sustained, and Superior's claim is disallowed.  The Court will enter a separate Order in accord with these Reasons.

New Orleans, Louisiana, June 18, 2015.

                                        Hon. Elizabeth W. Magner
                                        U.S. Bankruptcy Judge

---

[23] *Wells Fargo Bank of Minnesota, N.A. v. Kobernick*, 2009 WL 7808949, *7 (S.D.Tex. 2009) (citing *In re Huang*, 275 F.3d 1173, 1177 (9th Cir. 2008).  *See also Klingman v. Levinson*, 831 F.2d 1292, n. 3 (7th Cir. 1987); *In re Saggus*, 528 B.R. 452, 461 (Bankr.M.D. Ala. 2015).